**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Sean L. Litteral (State Bar No. 331985)
Elvia M. Lopez (State Bar No. 331986)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
           slitteral@bursor.com
           elopez@bursor.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENILE THAMES, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>  v.<br><br>MARS INC.,<br><br>     Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jenile Thames ("Plaintiff") brings this action on behalf of himself, and all others similarly situated against Mars, Inc. ("Defendant").  Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

## NATURE OF THE ACTION

1.     Plaintiff brings this Class action lawsuit on behalf of himself and similarly situated consumers ("Class Members") who purchased for personal, family, or household consumption, Defendant's candies sold under the brand name "Skittles" (the "Products"),[1] which are unfit for human consumption because they contain titanium dioxide ("TiO2"), a known toxin.  Defendant has long known of the health problems posed by TiO2.  In fact, in February 2016, Defendant publicly committed to phasing out TiO2.  But Defendant has flouted its own promise to consumers.  More than six years later, Defendant continues to sell the Products with TiO2, unbeknownst to reasonable consumers who purchase the Products.

2.     Interestingly, in its February 2016 press release, Defendant blew smoke, suggesting that its planned phase out of TiO2 was called for simply because "consumers today are calling on food manufacturers to use more natural ingredients in their products."  Incredibly, Defendant even claimed that "[a]rtificial colors pose no known risks to human health or safety."  In doing so, Defendant concealed from consumers material information it knew.  Namely, that numerous of its competitors and other food manufacturers had long removed the toxin from their product lines because of scientific research showing that the toxin is unsafe for consumption.

3.     Several nations have banned the harmful toxin.  For example, in 2019, the toxin was banned in France, where Defendant maintains offices and announced that it could and would comply with France's law.

4.     In May 2021, the European Food Safety Authority ("EFSA") released its report on the health concerns associated with TiO2, determining that TiO2 could not be considered safe for consumption.  Professor Maged Younes, Chair of EFSA's expert Panel on Food Additives and

---

[1] This includes Skittles Original, Skittles Wild Berry, Sour Skittles, Tropical Skittles, and Smoothies Skittles, among others.

Flavourings ("FAF") underscored these findings, stating that: "Taking into account all available scientific studies and data, the Panel concluded that titanium dioxide can no longer be considered safe as a food additive.  A critical element in reaching this conclusion is that we could not exclude genotoxicity concerns after consumption of titanium dioxide particles."[2]

5.      Building on EFSA's research, the European Commission ("EC") announced that it too would adopt a ban on the use of TiO2 as a food additive.  Under that plan, the ban would apply following a six-month transition period, and beginning summer 2022, the additive should no longer be added to food products.  That plan was adopted unanimously by Member States.

6.      Defendant—with offices in Netherland, Denmark, Ireland, Italy, Portugal, Germany, Norway, Czech Republic, Romania, Belgium Switzerland, Austria, Slovakia, Hungary, France, Greece, and Spain[3]—and with sales in each of those Member States was reminded of the scientific findings concerning TiO2 and was required to comply with the EC's ban.

7.      Nonetheless, in the United States, Defendant maintains sales with TiO2 as an additive, failing to inform consumers of the implications of consuming the toxin.  Instead, Defendant relies on the ingredient list which is provided in miniscule print on the back of the Products, the reading of which is made even more challenging by the lack of contrast in color between the font and packaging, as set out below in a manner in which consumers would normally view the product in the store.



---

[2] EFSA, "Titanium dioxide: E171 no longer considered safe when used as a food additive," (May 6, 2021), https://www.efsa.europa.eu/en/news/titanium-dioxide-e171-no-longer-considered-safe-when-used-food-additive.

[3] MARS, "Our Locations," https://cze.mars.com/en/locations?language_content_entity=en.

8. Consequently, consumers who purchase Defendant's Products are at heightened risk of a host of health effects for which they were unaware stemming from genotoxicity—the ability of a chemical substance to change DNA.

9. Based on Defendant's omissions, a reasonable consumer would expect that the Product can be safely purchased and consumed as marketed and sold. However, the Products are not safe and pose a significant health risk to unsuspecting consumers. Yet, neither before nor at the time of purchase does Defendant notify consumers like Plaintiff that the Products are unsafe to consumers, contain heightened levels of titanium dioxide, and should otherwise be approached with caution.

10. Accordingly, Plaintiff brings his claims against Defendant individually and on behalf of a class of all others similarly situated for (1) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq.; (2) violation of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, et seq.; (3) breach of the Implied Warranty under Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1792, et seq.; and California Commercial Code § 2314; (4) violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17200, et seq.; (5) Fraud; (6) Fraudulent Inducement; (7) Fraudulent Omission or Concealment; and (8) Quasi-Contract / Unjust Enrichment.

## PARTIES

11. Plaintiff Jenile Thames is a natural person and citizen of California who resides in San Leandro, California. In or around April 11, 2022, Mr. Thames purchased Original Skittles from a brick-and-mortar QuikStop in San Leandro, California. Prior to his purchase, Mr. Thames reviewed the labeling, packaging, and marketing materials of the products and saw the false and misleading claims that, among other things, the Products are safe for human consumption. Mr. Thames understood these claims to be representations and warranties by Mars, Inc., that the Products are free from all traces of harmful ingredients. Mr. Thames reasonably relied on these representations and warranties in deciding to purchase the Products, and these representations were part of the basis of the bargain in that he would not have purchased the Products or would not have purchased them on the same terms, if the true facts about its contents had been known. As a direct

result of Mars Inc.'s material misrepresentations and omissions, Mr. Thames suffered, and continues to suffer, economic injuries.

12.    Mr. Thames remains interested in purchasing candies from Defendant that are safe for consumption.  However, Plaintiff is unable to determine if the Products are actually safe for consumption.  Plaintiff understands that the composition of the Products may change over time.  But as long as Defendant may market the Products as safe for consumption when the Products are not safe consumption, then when presented with false or misleading information when shopping, he will be unable to make informed decisions about whether to purchase Defendant's Products and will be unable to evaluate the different prices between Defendant's Products and competitor's Products. Plaintiff is further likely to be repeatedly misled by Defendant's conduct, unless and until Defendant is compelled to ensure that Products marketed and labeled as safe for consumption, are, in fact, safe for consumption.

13.    Defendant Mars Inc. is a foreign corporation with its domestic headquarters located at 9885 Elm Street, McLean, Virginia 22101.  Relevant to Plaintiff's claim herein, Mars is a leading manufacturer, packager, and distributor of, among other products, candy, and confectionery.  Mars Inc. has done business throughout California and the United States at all times during the Class Period.  At all relevant times, Mars Inc., has advertised, marketed, manufactured, distributed, and/or sold candy and confectionery, including the Products at issue, to consumers in and throughout California and the United States.  At all relevant times, Mars Inc., formulated, directed, controlled, had the authority to control, and/or participated in the acts and practices set fourth in this Complaint.

14.    Plaintiffs reserve the right to amend this Complaint and add different products and additional defendants, including without limitation and officer, director, employee, supplier, or distributor of Defendant who has knowingly and willfully aided, abetted, and/or conspired in the false and deceptive conduct alleged herein.

## JURISDICTION AND VENUE

15.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as amended by the Class Action Fairness Act of 2005 ("CAFA"), because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00,

exclusive of interest and costs, there are over 100 members of the putative class, and Plaintiffs, as well as most members of the proposed class, are citizens of different states than Defendant.  This Court has personal jurisdiction over Defendant because it is licensed to do business in California, has designated an agent for services of process in California, and otherwise conducts substantial business in California.

16.     This Court has personal jurisdiction over Defendant because Defendant conducts substantial business within California such that Defendant has significant, continuous, and pervasive contacts with the State of California.

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant does substantial business in this District and a substantial part of the events giving rise to Plaintiff's claims took place within this District and Plaintiff saw and heard Defendant's advertisements in this District.

## FACTUAL ALLEGATIONS

### A.     Mars' Candy Skittles

18.     Skittles candy are manufactured, marketed, and sold by Mars Wrigley.  The candy is well-known by its colorful array, which Mars has dubbed "the rainbow" for marketing purposes to great success.  For example, Skittles was "America's favorite non-chocolate chewy candy in 2017, with sales in excess of $185 million U.S. dollars."[4]

19.     The color of Defendant's rainbow, however, is due to its use of TiO2.

20.     Significantly, Defendant need not rely on the use of TiO2 to achieve this result.

21.     Numerous of Defendant's competitors do not use TiO2 in their Products and yet are able to maintain the colorful impression Defendant hopes to achieve with its Products.

22.     For example, Swedish Fish Soft & Chewy Candy does not rely on TiO2 and yet achieves a bright red color.

23.     Likewise, Black Forest Gummy Bears does not rely on TiO2 and still strikes an assortment of colors, including orange, red, yellow, and green.

---

[4] Nils-Gerrit Wunsch, *Sales of Leading Non-Chocolate Chewy Candy Brands of the United States in 2017*, STATISTA (Nov. 25, 2020) available at https://www.statista.com/statistics/190409/top-non-chocolate-chewy-candy-brands-in-the-united-states/ (last visited June 10, 2022).

24.     Similarly, Sour Patch Kids does not make use of TiO2 and accomplishes vivid colors like lime green, yellow, orange, and redberry.

25.     Nerds also achieves bright colors including blue, green, red, and orange without the use of TiO2.

26.     Indeed, even Defendant has colorful confectionary goods such as its M&Ms product line that do not rely on TiO2.

**B.     Titanium Dioxide is Harmful to Human Health**

27.     In February 2016, Defendant alerted the public of its intention to remove TiO2 from its confectionary products.

28.     Following that announcement, Jaydee Hanson, Senior Policy Analyst at Center for Food Safety, stated that "We are pleased to see that MARS has taken a positive step toward eliminating toxic, unnecessary nanomaterials from its line of food products.  We urge the company to speed up the removal of these additives, especially given the grave health concerns associated with titanium dioxide and other nanoparticles."

29.     Mr. Hanson further stated that "Studies have shown that the human health risks associated with ingesting nanoparticles of many common food additives far outweigh any utility for producers.  There are plenty of non-toxic alternatives available and we urge MARS and others to commit to not using any engineered nanomaterials in human and animal food products."

30.     Defendant's public statements built on efforts by other large food companies to remove TiO2 from their products.  In March 2015, for example, Dunkin Donuts announced that it would no longer use TiO2.

31.     The reason for eliminating titanium dioxide is simple: TiO2—which is used in paints, coatings, adhesives, plastics, printing inks, and roofing materials—has demonstrated an ability to pass through biological membranes, circulate through the body, and enter cells.  Research shows that the effects are serious, including DNA and chromosomal damage, organ damage, inflammation, brain damage, genital malformations, lesions in the liver and kidneys, and cell neurosis.

32.     Titanium dioxide also builds up in the body's intestinal tract.  Ordinarily, the intestinal track serves to absorb nutrients for the body.  However, titanium dioxide cannot be absorbed.  When

this occurs, the body's M-Cells absorb these particles and bring them to the innate immune system. Overtime, the titanium dioxide particles are incorporated by the innate immune system cells where they will remain without being degraded or dissolved.

33.     In 2019, the French government responded to these troubling findings by banning all foods containing titanium dioxide.  This ban took effect in January 2020.

34.     At that time, Defendant's subsidiary, Mars Wrigley Confectionary France, confirmed that it could and would comply with the law.

35.      Later that year, in October 2020, the European Parliament removed titanium dioxide from the list of food additives authorized by the European Union for human consumption.  European researchers studying titanium dioxide noted that the long half-lives of titanium dioxide nanoparticles created the potential for the particles to accumulate inside human organs and tissue.  European researchers also determined that titanium dioxide nanoparticles could cause DNA strands to break, leading to chromosomal damage.

**C.     Defendant's Omissions Concerning TiO2 is Actionable**

36.     Despite its February 2016 commitment to U.S. consumers and its apparent compliance with the laws of the European Commission, Defendant has endangered U.S. consumers, exposing them to TiO2, which Defendant knows carries significant health concerns.  It also failed to tell consumers that contrary to its earlier representations, it did not remove TiO2.

37.     As a result, Plaintiff and the Class were injured by the full purchase price of the Products because the Products are worthless, as they are marketed as safe for human consumption when they are not in fact safe for human consumption.

38.     Plaintiff and Class Members bargained for products that are safe for consumption and were deprived of the basis of their bargain when Defendant sold them Products in packaging containing dangerous substances with serious health consequences.

39.     No reasonable consumer would expect that the Products marketed as safe for human consumption would pose a risk to their health, safety, and well-being, or that it would contain TiO2, which is linked to harmful health effects in humans.  Accordingly, Plaintiff and Class Members suffered economic injuries as a result of purchasing the Products.

40.     As the Products expose consumers to a substance that pose a risk to consumers' health, the Products are not fit for consumption by humans.  Plaintiff and the Class are further entitled to damages for the injury sustained in being exposed to TiO2, damages related to Defendant's conduct, and injunctive relief.

41.     Moreover, because these facts relate to a critical safety-related deficiency in the Products, Defendant was under a continuous duty to disclose to Plaintiff and Class Members the true standard, quality, and grade of the Products and to disclose that the Products contained substances known to have adverse health effects.  Nonetheless, Defendant concealed and misrepresented this information, as discussed herein.

42.     Although Defendant is in the best position to know what content it placed on its packaging during the relevant timeframe, and the knowledge that Defendant had regarding the presence of TiO2, and its failure to warn consumers that the Products contained TiO2, to the extent necessary, Plaintiff satisfies the requirements of Rule 9(b) by alleging the following facts with particularity:

43.     **WHO**:  Defendant made material omissions of fact about the Products through its labeling which shows that the Products are safe for human consumption.  These representations constitute omitted material information regarding harmful chemicals.

44.     **WHAT**:  Defendant's conduct here was, and continues to be, fraudulent because it omitted and concealed that the Products contain a substance—TiO2—that is widely known to have significant health repercussions.  Thus, Defendant's conduct deceived Plaintiff and Class Members into believing that the Products are safe for human consumption when they are not.  Defendant knew or should have known that this information is material to reasonable consumers, including Plaintiff and Class Members in making their purchasing decisions, yet they continued to pervasively market the Product in this manner in the U.S. market.

45.     **WHEN**:  Defendant made material omissions during the putative class periods, including prior to and at the time Plaintiff and Class Members purchased the Products, despite its knowledge that the Products' packaging contained TiO2, a harmful substance with known adverse health effects.

46.     **WHERE**:   Defendant's marketing message was uniform and pervasive, carried through material omissions on the labeling of the Product's packaging, website, and through marketing materials.

47.     **HOW**:  Defendant made material omissions of fact regarding the Products, including the presence of TiO2 in the Products.

48.     **WHY**:   Defendant made the material omissions detailed herein for the express purpose of inducing Plaintiff, Class Members, and all reasonable consumers to purchase and/or pay for the Products, the effect of which was that Defendant profited by selling the Products to hundreds of thousands of consumers.

49.     **INJURY**:  Plaintiff and Class Members purchased, paid a premium (up to the full-price), or otherwise paid more for the Products when they otherwise would not have absent Defendant's omissions.

## CLASS ALLEGATIONS

50.     ***Class Definition.***     Plaintiffs bring this action on behalf of a class of similarly situated individuals, defined as all persons in the United States who, within the applicable statute of limitations period, up to and including the date of final judgement in this action, purchased any of Defendant's Products at issue (the "Class")

(a)     ***California Subclass.*** Plaintiff Jenile Thames also seeks to represent a subclass of all Class members who within the applicable statutes of limitations period, up to and including the date of final judgement in this action, purchased any of the Products at issue in California (the "California Subclass").

51.     Excluded from the Class and Subclasses are persons who made such purchase for purpose of resale, Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, the judge to whom this action is assigned, and members of the judge's staff, and the judge's immediate family.

52.     Plaintiff reserves the right to amend the definition of the Class and Subclass if discovery or further investigation reveals that the Class or Subclass should be expanded or otherwise modified.

53.     *Numerosity.*   Members of the Class and Subclass are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class and Subclass number in the millions.  The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined though discovery.  Class members may be notified of the pendency of this action by mail and/or publications through the distribution records of Defendant and third-party retailers and vendors.

54.     *Commonality and Predominance.*   Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include but are not limited to: whether Defendant warranted the Products as "Safe for Human Consumption"; whether the Products contain Titanium Dioxide; whether Defendant breached these warranties; and whether Defendant committed the statutory and common law violations alleged against them herein by doing so.

55.     *Typicality.*      The claims of the named Plaintiff is typical of the claims of the Class in that Plaintiffs purchased one of Defendant's Products in reliance on the presentations and warranties described above and suffered a loss as a result of that purchase.

56.     *Adequacy.*      Plaintiff is an adequate representative of the Class and respective Subclass because his interest does not conflict with the interests of the Class and Subclass members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously.  The interests of the Class and Subclass members will be fairly and adequately protected by Plaintiffs and their counsel.

57.     *Superiority.*     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members.  Each individual Class members may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense of all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of the case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and

comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issue will ensure that all claims and claimants are before this Court for consistent adjudication of liability issues.

58.     Defendant has acted or failed to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class and Subclass as a whole.

59.     Without a class action, Defendant will continue a course of action that will result in further damages to Plaintiff and members of the Class and Subclass and will likely retain the benefits of its wrongdoing.

60.     Based on the foregoing allegations, Plaintiff's claims for relief include those set forth below.

## COUNT I
### Violation of California's Unfair Competition Law,
### Cal. Bus. & Prof. Code §§ 17200, *et seq.*

61.     Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

62.     Plaintiff brings this claim individually and on behalf of the Class against Defendant.

63.     California Business and Professions Code § 17200 prohibits "any unlawful, unfair, or fraudulent business act or practice."  For the reasons discussed above, Defendant has engaged in unlawful, unfair, and fraudulent business acts or practices in violation of California Business & Professions Code § 17200.

64.     By committing the acts and practices alleged herein, Defendant has violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210, as to the Class, by engaging in unlawful, fraudulent, and unfair conduct.

65.     Defendant has violated the UCL's proscription against engaging in **Unlawful Business Practices** as a result of its violations of the CLRA, Cal. Civ. Code § 1770(a)(5), (a)(7), and (a)(9) as alleged below, violations of California's Song-Beverly Act, and violations of California's False Advertising Law, in addition to breaches of warranty and violations of common law.

66.     As more fully described above, Defendant's misleading marketing, advertising, packaging, and labeling of the Product is likely to deceive reasonable consumers.  In addition,

Defendant has committed unlawful business practices by, inter alia, making the omissions of material facts, as set forth more fully herein, and violating the common law.

67.    Plaintiff and the Class Members reserve the right to allege other violations of law which constitute other unlawful business acts or practices.

68.    Defendant has also violated the UCL's proscription against engaging in **Unfair Business Practices**.  Defendant's acts, omissions, misrepresentations, practices and non-disclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of Business & Professions Code § 17200 *et seq.* in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

69.    There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

70.    Defendant has further violated the UCL's proscription against engaging in **Fraudulent Business Practices**.  Defendant's claims, nondisclosures and misleading statements with respect to the Product, as more fully set forth above, were false, misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code § 17200.

71.    Plaintiff and the other Class Members suffered a substantial injury by virtue of buying the Products that they would not have purchased absent Defendant's unlawful, fraudulent, and unfair marketing, advertising, packaging, and omission about the defective nature of the Products.

72.    There is no benefit to consumers or competition from deceptively marketing and omitting material facts about the true nature of the Products.

73.    Plaintiff and the other Class Members had no way of reasonably knowing that the Products they purchased were not as marketed, advertised, packaged, or labeled.  Thus, they could not have reasonably avoided the injury each of them suffered.

74.    The gravity of the consequences of Defendant's conduct as described outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives which exist in the marketplace, and such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiff and the other Class Members.

75.     Pursuant to California Business and Professional Code § 17203, Plaintiff and the Class seek an order of this Court that includes, but is not limited to, an order requiring Defendant to (a) provide restitution to Plaintiff and the other Class Members; (b) disgorge all revenues obtained as a result of violations of the UCL; and (c) pay Plaintiff's and Class members' attorneys' fees and costs.

76.     Here, equitable relief is appropriate because Plaintiff may lack an adequate remedy at law, if, for instance damages resulting from his purchase of the Products is determined to be an amount less than the premium price of the Product.  Without compensation for the full premium price of the Products, Plaintiff would be left without the parity in purchasing power to which he is entitled.

77.     Injunctive relief is also appropriate, and indeed necessary, to require Defendant to provide full and accurate disclosures regarding the Products so that Plaintiff and Class members can reasonably rely on Defendant's representations as well as those of Defendant's competitors who may then have an incentive to follow Defendant's deceptive practices, further misleading consumers.

78.     Restitution and/or injunctive relief may also be more certain, prompt, and efficient than other legal remedies requested herein.  The return of the full premium price, and an injunction requiring either (1) adequate disclosure of TiO2 in the Product and its effects; or (2) the removal of such chemicals from the Product packaging, will ensure that Plaintiff is in the same place he would have been in had Defendant's wrongful conduct not occurred, i.e., the position to make an informed decision about the purchase of the Products absent omissions with the full purchase price at his disposal.

## <u>COUNT II</u>
### Violation of California's Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1750, *et seq.*

79.     Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

80.     Plaintiff brings this claim individually and on behalf of the Class against Defendant

81.     Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not

have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."

82.     Civil § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

83.     Civil § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised."

84.     Defendant violated Civil Code § 1770(a)(5), (a)(7), and (a)(9) by holding out the Product as safe for human consumption, when in fact the Product is not safe, dangerous, and useless.

85.     The Products are not safe because they contain TiO2, a harmful toxin with known adverse health effects.

86.     Defendant has exclusive or superior knowledge of the Product's composition and the associated health concerns, which was not known to Plaintiff or Class Members.

87.     Plaintiff and Class Members have suffered harm as a result of these violations of the CLRA because they have incurred charges and/or paid monies for the Product that they otherwise would not have incurred or paid, and were unknowingly exposed to a significant and substantial health risk.

88.     On April 13, 2022, prior to the filing of this Complaint, Plaintiff's counsel sent Defendant a CLRA notice letter, which complies in all respects with California Civil Code § 1782(a). The letter was sent via certified mail, return receipt requested, advising Defendant that it was in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.  The letter stated that it was sent on behalf of all other similarly situated purchasers.  Defendant refused to correct its practices.  Accordingly, Plaintiff, individually, and on behalf of the proposed Class, seeks, in addition to injunctive relief, monetary damages from Defendant as permitted by Civil Code § 1782(d) for Defendant's violations of the CLRA.

89.     Here, equitable relief is appropriate because Plaintiff may lack an adequate remedy at law, if, for instance damages resulting from his purchase of the Products is determined to be an amount less than the premium price of the Products.  Without compensation for the full premium

1    price of the Products, Plaintiff would be left without the parity in purchasing power to which he is

2    entitled.

3    90.    Injunctive relief is also appropriate, and indeed necessary, to require Defendant to

4    provide full and accurate disclosures regarding the Products so that Plaintiff and Class members can

5    reasonably rely on Defendant's representations as well of those of Defendant's competitors who may

6    then have an incentive to follow Defendant's deceptive practices, further misleading consumers.

7    91.    Restitution and/or injunctive relief may also be more certain, prompt, and efficient

8    than other legal remedies requested herein.  The return of the full premium price, and an injunction

9    requiring either (1) adequate disclosure of TiO2 in the Products and its effects; or (2) the removal of

10   such chemicals from the Products', will ensure that Plaintiff is in the same place he would have been

11   in had Defendant's wrongful conduct not occurred, i.e., the position to make an informed decision

12   about the purchase of the Products absent omissions with the full purchase price at his disposal.

## COUNT III
### Breach of Implied Warranty Under the Song-Beverly Act, Cal. Civ. Code § 1790, *et seq.* and California Commercial Code § 2314

15   92.    Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

16   93.    Plaintiff brings this claim individually and on behalf of the Class against Defendant.

17   94.    Under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790. *et seq.*, and

18   California Commercial Code § 2314, every sale of consumer goods in the State of California is

19   accompanied by both a manufacturer's and retailer seller's implied warranty that the goods are

20   merchantable, as defined in that Act.  In addition, every sale of consumer goods in California is

21   accompanied by both a manufacturer's and retail seller's implied warranty of fitness when the

22   manufacturer or retailer has reason to know that the goods as represented have a particular purpose

23   and that the buyer is relying on the manufacturer's or retailer's skill or judgment to furnish suitable

24   goods consistent with that represented purpose.

25   95.    The Products at issue here are "consumer goods" within the meaning of Cal. Civ.

26   Code § 1791(a).

96.    Plaintiff and the Class Members who purchased the Products are "retail buyers" within the meaning of Cal. Civ. Code § 1791.

97.    Defendant is in the business of manufacturing, assembling, and/or producing the Product and/or selling the Product to retail buyers, and therefore are a "manufacturer" and "seller" within the meaning of Cal. Civ. Code § 1791.

98.    Defendant impliedly warranted to retailer buyers that the Products were merchantable in that they would: (a) pass without objection in the trade or industry under the contract description, and (b) were fit for the ordinary purposes for which the Products are used.  For a consumer good to be "merchantable" under the Act, it must satisfy both of these elements.  Defendant breached these implied warranties because the Products were unsafe for human consumption.  Therefore, the Products would not pass without objection in the trade or industry and were not fit for the ordinary purpose for which they are used.

99.    Plaintiff and Class Members purchased the Products in reliance upon Defendant's skill and judgment in properly packaging and labeling the Products.

100.    The Products were not altered by Plaintiff or the Class Members.

101.    The Products were defective at the time of sale when they were in the exclusive control of Defendant.  The issue as described in this complaint was latent in the product and not reasonably discoverable at the time of sale.

102.    Defendant knew that the Products would be purchased and consumed without additional testing by Plaintiff and Class Members.

103.    As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiff and Class Members have been injured and harmed because they would not have purchased the Products if they knew the truth about the Products, namely, that they were unfit for use and posed a significant safety risk.

104.    Plaintiff and the Class seek compensatory damages, attorneys' fees, costs, and any other just and proper relief available under law.

///

///

**<u>COUNT IV</u>**
**(Violation of California's False Advertising Law,**
**Cal. Bus. & Prof. Code § 17500, *et seq*.)**

105.    Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

106.    Plaintiff brings this claim individually and on behalf of Class against Defendant.

107.    Defendant's acts and practices, as described herein, have deceived and/or are likely to continue to deceive Class Members and the public.  As described above, and throughout this Complaint, Defendant misrepresented the Products as safe for human consumption, in fact, the Products were not safe.

108.    By its actions, Defendant disseminated uniform advertising regarding the Products to and across California.  The advertising was, by its very nature, unfair, deceptive, untrue, and misleading within the meaning of Cal. Bus. & Prof. Code § 17500, *et seq*.  Such advertisements were intended to and likely did deceive the consuming public for the reasons detailed herein.

109.    The above-described false, misleading, and deceptive advertising Defendant disseminated continues to have a likelihood to deceive in that Defendant failed to disclose that the Products contain substances that pose a significant risk to the health and well-being of Plaintiff and the Class Members.

110.    Defendant continues to misrepresent to consumers that the Products are safe for consumption.  However, as described, that is not the case.

111.    In making and disseminating these statements, Defendant knew, or should have known, its advertisements were untrue and misleading in violation of California law.  Plaintiff and other Class Members based their purchasing decisions on Defendant's omitted material facts.  The revenue attributable to the Products sold in those false and misleading advertisements likely amounts to tens of millions of dollars.  Plaintiff and Class Members were injured in fact and lost money and property as a result.

112.    The misrepresentations and non-disclosures by Defendant of the material facts described and detailed herein constitute false and misleading advertising and, therefore, constitutes a violation of Cal. Bus. & Prof. Code § 17500, *et seq*.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                      17

113.    As a result of Defendant's wrongful conduct, Plaintiff and Class Members lost money in an amount to be proven at trial.  Plaintiff and Class Members are therefore entitled to restitution as appropriate for this cause of action.

114.    Plaintiff and Class Members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendant's unfair, unlawful, and fraudulent business practices; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief.

115.    Here, equitable relief is appropriate because Plaintiff may lack an adequate remedy at law, if, for instance damages resulting from his purchase of the Products is determined to be an amount less than the premium price of the Products.  Without compensation for the full premium price of the Products, Plaintiff would be left without the parity in purchasing power to which he is entitled.

116.    Injunctive relief is also appropriate, and indeed necessary, to require Defendant to provide full and accurate disclosures regarding the Products so that Plaintiff and Class members can reasonably rely on Defendant's representations as well of those of Defendant's competitors who may then have an incentive to follow Defendant's deceptive practices, further misleading consumers.

117.    Restitution and/or injunctive relief may also be more certain, prompt, and efficient than other legal remedies requested herein.  The return of the full premium price, and an injunction requiring either (1) adequate disclosure of the TiO2 in the Products and its effects; or (2) the removal of such chemicals from the Products, will ensure that Plaintiff is in the same place he would have been in had Defendant's wrongful conduct not occurred, i.e., the position to make an informed decision about the purchase of the Products absent omissions and misrepresentations with the full purchase price at his disposal.

## COUNT V
### Fraud

118.    Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

119.    Plaintiff brings this claim individually and on behalf of the Class.

120.    At the time Plaintiff and Class Members purchased the Products, Defendant did not disclose, but instead concealed and misrepresented, the Products as safe for human consumption.

121.    Defendant also knew that its omissions and misrepresentations regarding the Products were material, and that a reasonable consumer would rely upon Defendant's omissions in making purchasing decisions.

122.    Plaintiff and Class Members did not know—nor could they have known through reasonable diligence—about the true nature of the Products.

123.    Plaintiff and Class Members would have been reasonable in relying on Defendant's omissions in making their purchasing decisions.

124.    Plaintiff and Class Members had a right to rely upon Defendant's omissions as Defendant maintained monopolistic control over knowledge of the true nature and quality of the Products.

125.    Plaintiff and Class Members sustained damages as a result of their reliance on Defendant's omissions, thus causing Plaintiff and Class Members to sustain actual losses and damages in a sum to be determined at trial, including punitive damages.

## COUNT VI
### Fraudulent Inducement

126.    Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

127.    Plaintiff brings this claim individually and on behalf of the Class.

128.    Defendant did not disclose, but instead concealed material information about the Products as discussed herein.

129.    Defendant knew, or should have known, that the Products were falsely and misleadingly portrayed and that knowledge of the safety-related issues discussed throughout was withheld from the consumer public.

130.    Defendant also knew that its omissions regarding the Products were material, and that a reasonable consumer would rely on Defendant's omissions in making purchasing decision.

131.    Plaintiff and Class Members did not know—nor could they have known through reasonable diligence—about the true nature and quality of the Products.

132.    Plaintiff and Class Members would have been reasonable in relying on Defendant's omissions in making their purchasing decisions.

133.    Plaintiff and Class Members had a right to rely on Defendant's omissions as Defendant maintained monopolistic / superior control over the Products, and what information was available regarding the Products.

134.    Defendant intended to induce—and did, indeed, induce—Plaintiff and Class Members into purchasing the Products based upon its omissions.

135.    Plaintiff and Class Members sustained damages as a result of their reliance on Defendant's omission, thus causing Plaintiff and Class Members to sustain actual losses and damages in a sum to be determined at trial.

## COUNT VII
### Fraudulent Concealment or Omission

136.    Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

137.    Plaintiff brings this claim individually and on behalf of the Class.

138.    At all relevant times, Defendant was engaged in the business of designing, manufacturing, distributing, and selling the Product.

139.    Defendant, acting through its representatives or agents, delivered the Products to its distributors and various other distribution channels.

140.    Defendant willfully, falsely, and knowingly omitted various material facts regarding the quality and character of the Products as discussed throughout.

141.    Rather than inform consumers of the truth regarding the Products, Defendant misrepresented the quality of the Products as discussed herein at the time of purchase.

142.    Defendant made these material misrepresentations to boost or maintain sales of the Products, and to falsely assure purchasers of the Products that Defendant is a reputable company and that its Products are safe for consumption.  The false representations were material to consumers because the omissions played a significant role in the value of the Products purchased.

143.    Plaintiff and Class Members accepted the terms of use, which were silent on the true nature of the Products, as discussed throughout.  Plaintiff and Class Members had no way of knowing

Defendant's omissions as to the Products and had no way of knowing that Defendant's omissions were misleading.

144.    Although Defendant had a duty to ensure the safety, completeness, and accuracy of the information regarding the Product, it did not fulfill these duties.

145.    Defendant omitted or concealed material facts partly to pad and protect its profits, as it saw that profits and sales of the Products were essential for its continued growth and to maintain and grow its reputation as a premier designer and vendor of the Products.  Such benefits came at the expense of Plaintiff and Class Members.

146.    Plaintiff and Class Members were unaware of these material omissions, and they would not have acted as they did had they known the truth.  Plaintiff's and class members' actions were justified given Defendant's omissions.  Defendant was in the exclusive / superior control of material facts, and such facts were not widely known to the public.

147.    Due to Defendant's misrepresentations, Plaintiff and Class Members sustained injury due to the purchase of the Products that did not live up to its advertised representations.  Plaintiff and Class Members are entitled to recover full refunds for the Products they purchased due to Defendant's omissions.

148.    Defendant's acts were done maliciously, oppressively, deliberately, and with intent to defraud, and in reckless disregard of Plaintiff, and Class Members' rights and well-being, and in part to enrich itself at the expense of consumers.  Defendant's acts were done to gain commercial advantage over competitors, and to drive consumers away from consideration of competing products. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future.

## COUNT VIII
### Quasi-Contract / Unjust Enrichment

149.    Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

150.    Plaintiff brings this claim individually and on behalf of the Class.

151.    To the extent required by law, this cause of action is alleged in the alternative to legal claims, as permitted under Fed. R. Civ. P. 8.

152.     Plaintiff and Class Members conferred benefits on Defendant by purchasing the Product.

153.     Defendant was unjustly enriched in retaining the revenues derived from Plaintiff and Class Members' purchases of the Products.  Retention of those moneys under these circumstances is unjust and inequitable because Defendant failed to disclose that the Product was unfit for its intended purpose as it was unsafe for use.  These omissions caused injuries to Plaintiff and Class Members because they would not have purchased the Products if the true facts were known.

154.     Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and Class Members is unjust and inequitable, Defendant has been unjustly enriched in an amount to be determined at trial.

155.     Here, equitable relief is appropriate because Plaintiff may lack an adequate remedy at law, if, for instance damages resulting from his purchase of the Products is determined to be an amount less than the premium price of the Products.  Without compensation for the full premium price of the Products, Plaintiff would be left without the parity in purchasing power to which he is entitled.

156.     Restitution may also be more certain, prompt, and efficient than other legal remedies requested herein.  The return of the full premium price will ensure that Plaintiff is in the same place he would have been in had Defendant's wrongful conduct not occurred, i.e., the position to make an informed decision about the purchase of the Products absent omissions and misrepresentations with the full purchase price at his disposal.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks Judgment against Defendant, as follows:

(a)     For an order certifying the Class under Fed. R. Civ. P. 23 and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel;

(b)     For an order declaring that Defendant's conduct violates the statutes referenced herein;

(c)     For an order finding in favor of Plaintiff, the Class on all counts asserted herein;

(d)  For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e)  For prejudgment interest on all amounts awarded;

(f)  For an order of restitution and all other forms of equitable monetary relief;

(g)  For injunctive relief as pleaded or as the Court may deem proper;

(h)  For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.


Dated:  July 14, 2022                 **BURSOR & FISHER, P.A**.

By: ___/s/ *L. Timothy Fisher*_____
                L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Sean L. Litteral (State Bar No. 331985)
Elvia M. Lopez (State Bar No. 331986)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
          slitteral@bursor.com
          elopez@bursor.com

*Attorneys for Plaintiff*

**<u>CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)</u>**

I, L. Timothy Fisher, declare as follows:

1.      I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court.  I am a partner at Bursor & Fisher, P.A., counsel of record for Jenile Thames. Plaintiff Thames resides in San Leandro, California.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.      The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Northern District of California, as Plaintiff purchased the Product from a retail store located within this District.  Additionally, Defendant advertised, marketed, manufactured, distributed, and/or sold the Products at issue to Plaintiff from this District.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed at Walnut Creek, California this 14th day of July, 2022.

_/s/ L. Timothy Fisher_____
L. Timothy Fisher