WILLIAMS & CONNOLLY LLP
Stephen D. Raber (SBN 121958)
David Horniak (SBN 268441)
680 Maine Avenue, SW
Washington, DC  20024
Telephone: 202-434-5000
Facsimile: 202-434-5029
Email: sraber@wc.com
         dhorniak@wc.com

*Attorneys for Defendant Mars, Incorporated*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENILE THAMES, | Case No. 22-cv-04145-JD |
| *Plaintiff*, | Hearing Date:  December 1, 2022 |
| vs. | Time:            10:00 a.m. |
| | Place:           Courtroom 11 |
| MARS, INCORPORATED, | Judge:           Hon. James Donato |
| *Defendant* | |

## DEFENDANT MARS, INCORPORATED'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT THEREOF

# NOTICE OF MOTION

## TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 1, 2022, at 10:00 a.m., or as soon thereafter as this matter may be heard, in Courtroom 11 of this Court, located at 19th Floor, 450 Golden Gate Avenue, San Francisco, California, Defendant Mars, Incorporated will and hereby does move the Court for an order dismissing Plaintiff's Complaint and each claim therein without leave to amend.

This Motion is made pursuant to Federal Rules of Civil Procedure 8(a), 9(b), 12(b)(1), and 12(b)(6) on the following grounds:

(1) Federal law preempts Plaintiff's claims;

(2) The Safe Harbor Doctrine bars Plaintiff's claims;

(3) Plaintiff lacks Article III standing because he has not suffered an injury in fact;

(4) Plaintiff lacks standing to seek injunctive relief;

(5) Plaintiff fails plausibly to allege deception;

(6) Plaintiff's UCL, FAL, unjust enrichment, and equitable CLRA claims must be dismissed because Plaintiff has an adequate remedy at law;

(7) Plaintiff fails to state a claim under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, *et seq*.

The Motion is based upon this Notice; the accompanying Memorandum of Points and Authorities, Request for Judicial Notice, declarations, and exhibits; any reply memorandum; the pleadings and files in this action; and such other matters as may be presented at or before the hearing.

Dated:  September 30, 2022                    Respectfully submitted,


                                             WILLIAMS & CONNOLLY LLP


                                             By: */s/ Stephen D. Raber*
                                                 Stephen D. Raber

Stephen D. Raber (SBN 121958)
David Horniak (SBN 268441)
680 Maine Avenue, SW
Washington, DC  20024
Telephone: 202-434-5000
Facsimile: 202-434-5029
Email: sraber@wc.com
          dhorniak@wc.com

*Attorneys for Defendant Mars,
Incorporated*

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................i

TABLE OF AUTHORITIES ........................................................................................ii

STATEMENT OF ISSUES TO BE DECIDED ........................................................ v

INTRODUCTION ........................................................................................................ 1

FACTUAL BACKGROUND........................................................................................ 2

   A.   Congress and FDA Regulate Color Additives in Food...................................... 2

   B.   FDA Regulates TiO2 in Food. ......................................................................... 2

   C.   SKITTLES® Complies with FDA Regulations.............................................. 3

   D.   Plaintiff's Complaint......................................................................................... 3

   E.   Mars's Announcement Regarding Removal of Artificial Colors from Its Products. .......... 4

LEGAL STANDARD.................................................................................................... 5

ARGUMENT ................................................................................................................ 5

I.    Federal Law Preempts Plaintiff's Claims. ....................................................... 5

   A.   The FDCA Preempts Plaintiff's Claims Premised on Use of TiO2..................... 6

   B.   The FDCA Preempts Plaintiff's Claims Premised on TiO2 Labeling. ............... 7

II.   The Safe Harbor Doctrine Bars Plaintiff's Claims. ........................................ 9

III.  Plaintiff Lacks Article III Standing.................................................................. 10

   A.   Plaintiff Alleges No Physical Injury or Plausible Risk of Future Harm.......... 10

   B.   Plaintiff Fails To Allege a Plausible Economic Injury. ................................... 11

   C.   Plaintiff Lacks Standing To Seek Injunctive Relief. ....................................... 12

IV.  Plaintiff Fails To State a Claim....................................................................... 13

   A.   Plaintiff Fails Plausibly To Allege Deception. ................................................ 13

   B.   Plaintiff's Equitable Claims Must Be Dismissed Because He Has an Adequate Remedy at Law. .......... 14

   C.   Plaintiff Fails To State a Song-Beverly Act Claim.......................................... 15

CONCLUSION ............................................................................................................ 15

# TABLE OF AUTHORITIES

## CASES

*Alvarez v. Chevron Corp.*, 656 F.3d 925 (9th Cir. 2011) ................................9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................5

*Backus v. Gen. Mills, Inc.*, 122 F. Supp. 3d 909 (N.D. Cal. 2015) ..................6

*Backus v. Nestlé USA, Inc.*, 167 F. Supp. 3d 1068 (N.D. Cal. 2016) ................7

*Beasley v. Lucky Stores, Inc.*, 400 F. Supp. 3d 942 (N.D. Cal. 2019) ..............6

*Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225 (9th Cir. 2019) .............13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................5

*Bourgi v. W. Covina Motors, Inc.*, 166 Cal. App. 4th 1649 (2008) ........... passim

*Boysen v. Walgreen Co.*, 2012 WL 2953069 (N.D. Cal. July 19, 2012) .........11, 12, 14

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163 (1999) ...........9

*Chae v. SLM Corp.*, 593 F.3d 936 (9th Cir. 2010) ...................................5

*Chuang v. Dr. Pepper Snapple Grp., Inc.*, 2017 WL 4286577 (C.D. Cal. Sept. 20, 2017)..........13

*Cimoli v. Alacer Corp.*, 546 F. Supp. 3d 897 (N.D. Cal. 2021)................12, 13

*Cohen v. Apple Inc.*, --- F. 4th ----, 2022 WL 3696583 (9th Cir. Aug. 26, 2022)
.................................................................................5, 6, 7, 9

*Cordes v. Boulder Brands USA, Inc.*, 2018 WL 6714323 (C.D. Cal. Oct. 17, 2018)..................13

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018)................5, 12, 13

*Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152 (9th Cir. 2012) .......................9

*Ebner v. Fresh, Inc.*, 838 F.3d 958 (9th Cir. 2016) ................................9

*Farina v. Nokia Inc.*, 625 F.3d 97 (3d Cir. 2010) .................................7

*Goldstein v. Gen. Motors LLC*, 2022 WL 484995 (S.D. Cal. Feb. 16, 2022) ..............14

*Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074 (N.D. Cal. 2017)...................5

*Ivie v. Kraft Foods Glob., Inc.*, 2013 WL 685372 (N.D. Cal. Feb. 25, 2013)................15

*Lam v. Gen. Mills, Inc.*, 859 F. Supp. 2d 1097 (N.D. Cal. 2012) ................7, 8

*Lisner v. Sparc Grp., LLC*, 2021 WL 6284158 (C.D. Cal. Dec. 29, 2021) ...............................14

*Matic v. U.S. Nutrition, Inc.*, 2019 WL 3084335 (C.D. Cal. Mar. 27, 2019) ..............................13

*McGee v. S-L Snacks, Nat'l*, 982 F.3d 700 (9th Cir. 2020) ...............................................10, 11, 12

*Pom Wonderful LLC v. Coca Cola Co.*, 2013 WL 543361 (C.D. Cal. Feb. 13, 2013)...................9

*Red v. Gen. Mills, Inc.*, 2015 WL 9484398 (C.D. Cal. Dec. 29, 2015) .......................................6, 7

*Salmon Spawning & Recovery All. v. Gutierrez*, 545 F.3d 1220 (9th Cir. 2008)........................10

*Schroeder v. United States*, 569 F.3d 956 (9th Cir. 2009) ..........................................................14

*Shanks v. Jarrow Formulas, Inc.*, 2019 WL 7905745 (C.D. Cal. Dec. 27, 2019)........................13

*Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020) ............................................14

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) ..........................................................................10

*Ting v. AT&T*, 319 F.3d 1126 (9th Cir. 2003) ......................................................................5, 6, 9

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ...........................................5, 13

21 C.F.R. § 70.3 ...................................................................................................................2, 6, 8

21 C.F.R. § 73.70 ...........................................................................................................................2

21 C.F.R. § 73.575 .............................................................................................................. passim

21 C.F.R. § 73.2250 ......................................................................................................................2

21 C.F.R. § 100.1 ...........................................................................................................................8

21 C.F.R. § 101.4 ...........................................................................................................................8

21 C.F.R. § 101.22 ......................................................................................................................1, 3

21 U.S.C. § 331 .............................................................................................................................2

21 U.S.C. § 342 .............................................................................................................................2

21 U.S.C. § 343-1 .......................................................................................................................7, 8

21 U.S.C. § 379e ........................................................................................................................2, 8

21 U.S.C. § 393 .............................................................................................................................6

Cal. Civ. Code § 1791 ..................................................................................................................15

Cal. Civ. Code § 1791.1 .......................................................................................13

Cal. Civ. Code § 1794 ..........................................................................................15

Cal. Com. Code § 2314 ........................................................................................13

Cal. Health & Safety Code § 110085 ...................................................................10

Cal. Health & Safety Code § 110115 ...................................................................10

Fed. R. Civ. P. 9(b) ...........................................................................................5, 13

Fed. R. Civ. P. 12(b)(6) .........................................................................................5

Nutrition Labeling and Education Act, Pub. L. No. 101-535, 104 Stat. 2353 (1990) ....................7

Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790 *et seq.* .....................................15

## STATEMENT OF ISSUES TO BE DECIDED

1.      Are Plaintiff's claims preempted by the federal Food, Drug, and Cosmetic Act and FDA regulations that specify how titanium dioxide can be "safely used" in human food and how manufacturers must disclose it on food labeling?

2.      Does the use and labeling of titanium dioxide in SKITTLES® fall within the safe harbor for conduct expressly permitted by California's Sherman Law?

3.      Does Plaintiff lack Article III standing because he has not plausibly alleged a cognizable physical or economic injury?

4.      Does Plaintiff lack standing to seek injunctive relief because he can ascertain whether SKITTLES® contain titanium dioxide before purchasing it in the future?

5.      Has Plaintiff failed plausibly to allege deception on the ground that SKITTLES® are unsafe for human consumption?

6.      Should Plaintiff's UCL, FAL, unjust enrichment, and equitable CLRA claims be dismissed because Plaintiff has adequate remedies at law?

7.      Has Plaintiff failed to state a claim under the Song-Beverly Consumer Warranty Act because SKITTLES® are exempt "consumables"?

1

## INTRODUCTION

2          FDA has determined that "titanium dioxide may be safely used for coloring foods

3    generally" when the "quantity of titanium dioxide does not exceed 1 percent by weight of the

4    food." 21 C.F.R. § 73.575(c)(1).  FDA never has deviated from that conclusion.  FDA also

5    specifies how manufacturers must declare coloring additives like titanium dioxide ("TiO2") in

6    food labeling:  The "label of a food to which any coloring has been added shall declare the coloring

7    in the statement of ingredients in the manner specified in paragraphs (k)(1) and (k)(2)" of 21 C.F.R.

8    § 101.22(k).  Plaintiff does not even cite these regulations, let alone allege that Mars violates them

9    in any way.

10         Instead, Plaintiff alleges that TiO2 should be removed from SKITTLES® products

11   altogether because he and others disagree with FDA's conclusion that TiO2 is safe.  He alleges

12   that the products are unsafe but does not allege that he or anyone else has actually suffered any

13   physical injury from consuming the product.  He also does not allege that he or anyone else faces

14   a substantial risk of future adverse health consequences.  He does not (and cannot) allege that the

15   concentration of TiO2 in SKITTLES® products exceeds FDA's authorized threshold, and he does

16   not identify any comparable product he would have purchased instead that he contends is cheaper

17   or safer.  He merely alleges, ignoring FDA's own findings, that TiO2 has the "potential" to

18   accumulate in the body and "could" cause certain health effects.  Plaintiff further alleges that the

19   labeling of SKITTLES® products misleads consumers because it fails to disclose that the products

20   are unsafe, notwithstanding FDA's contrary conclusion.

21         The Complaint should be dismissed with prejudice.  First, Plaintiff's claims are preempted

22   by federal law.  The claims depend entirely on this Court finding that TiO2 is unsafe—in direct

23   conflict with FDA's determination that TiO2 is safe.  Second, California's safe harbor doctrine

24   bars the claims because the Sherman Law expressly permits the use of TiO2 in food and specifies

25   the manner in which TiO2 "shall" be declared in the labeling, and Mars complies with those legal

26   requirements.  Third, Plaintiff lacks Article III standing because he fails plausibly to allege he

27   suffered any economic or physical injury or has any increased risk of health problems in the future.

28   Plaintiff also lacks standing to seek injunctive relief because he can ascertain whether SKITTLES®

contain TiO2 simply by reviewing the label.  Finally, the Complaint fails to state a claim because Plaintiff does not plausibly allege deception; fails to state UCL, FAL, equitable CLRA, and unjust enrichment claims because Plaintiff has an adequate remedy at law; and fails to state a Song-Beverly Act claim because that statute does not apply to "consumables" like SKITTLES®.

## FACTUAL BACKGROUND

### A.    Congress and FDA Regulate Color Additives in Food.

The Food, Drug, and Cosmetic Act ("FDCA") prohibits the sale of "adulterated" foods, including any food that "bears or contains[] a color additive which is unsafe." 21 U.S.C. §§ 331(a), 342(c).  It delegates to FDA that safety determination, providing that a color additive may be used only if FDA has issued regulations "prescribing the conditions under which such additive may be safely used."  21 U.S.C. § 379e(a)(1)(A).  FDA must determine that "the data before [FDA] establish that such use, under the conditions of use specified in the regulations, will be safe," *id.* § 379e(b)(4), where "safe" means "there is convincing evidence that establishes with reasonable certainty that no harm will result from the intended use of the color additive," 21 C.F.R. § 70.3(i).

To determine whether a color additive is safe, FDA must "consider, among other relevant factors," "the probable consumption of, or other relevant exposure from, the additive" and "the cumulative effect, if any, of such additive in the diet of man." 21 U.S.C. § 379e(b)(5)(A).  FDA cannot determine a color additive is safe "if the additive is found by the [FDA] to induce cancer when ingested" or if "the data . . . show that" use of the additive "would promote deception of the consumer . . . or would otherwise result in misbranding or adulteration." *Id.* § 379e(b)(5)(B), (b)(6).  If FDA approves a color additive for use, manufacturers must still "certif[y]" that each color additive meets FDA's regulatory requirements unless FDA also determines certification is not "necessary in the interest of the protection of the public health." *Id.* § 379e(c).

### B.    FDA Regulates TiO2 in Food.

FDA has determined that along with TiO2, 21 C.F.R. § 73.575, a number of other substances can be safely used to color foods, including such things as iron oxide, *id.* § 73.2250, and calcium carbonate, *id.* § 73.70.  TiO2 is an opaque white powder that for a century has been used as a color additive in foods as varied as pastries, milk, salad dressing, sauces, snacks, coffee

creamers, and cake decorations.  Pursuant to its obligations under the FDCA, FDA has determined that "titanium dioxide may be safely used for coloring foods generally," but requires that it "not exceed 1 percent by weight of the food." 21 C.F.R. § 73.575(c)(1).  It has further determined that TiO2 batches are exempt from certification because it "is not necessary for the protection of the public health." *Id.* § 73.575(e).

Labeling of TiO2 as an ingredient in food is governed by 21 C.F.R. § 101.22(k)(2).  According to that provision, "[c]olor additives not subject to certification"—including TiO2— "may be declared as 'Artificial Color,' 'Artificial Color Added,' or 'Color Added' (or by an equally informative term that makes clear that a color additive has been used in the food)," or "[a]lternatively, such color additives may be declared as 'Colored with ___' or '___ color.'" *Id.*

### C.    SKITTLES® Complies with FDA Regulations.

Like many other food products, SKITTLES® contain small amounts of TiO2 as a color additive.  Plaintiff does not, and cannot, allege that the composition and quantity of TiO2 in SKITTLES®, or its labeling, fails to comply with FDA regulations.  Further, the ingredients statement on SKITTLES® voluntarily and expressly discloses TiO2 by name as a color additive:



RJN Ex. A.

### D.    Plaintiff's Complaint.

Plaintiff alleges that use of TiO2 in SKITTLES® violates California consumer protection laws and constitutes various types of fraud, unjust enrichment, and breach of an implied warranty

---

1    under the Song-Beverly Consumer Warranty Act.  Compl. ¶¶ 61–156.  He seeks damages,

2    restitution, injunctive relief, and attorneys' fees on behalf of a nationwide class and, in the

3    alternative, a California subclass.  *Id.* ¶ 50; *id.* pp. 22–23 (Request for Relief).

4        Given FDA's express approval of TiO2 in products like SKITTLES®, Plaintiff resorts to

5    relying on recent regulatory actions by France and the European Commission to ban the use of

6    TiO2 in food in France and Europe.  *Id.* ¶¶ 3–5.  Plaintiff also cites Mars's February 2016

7    announcement that it planned to remove artificial color additives from its human food products.

8    *Id.* ¶¶ 1–2.  According to Plaintiff, these various allegations establish that TiO2 is unsafe.  *Id.* ¶¶ 1,

9    8–9.

10       Plaintiff appears to advance two different theories of liability.  First, he alleges "use"

11   liability, *i.e.*, that using TiO2 in SKITTLES® violates California state law.  *See, e.g.*, Compl. ¶ 101.

12   Second, he alleges "labeling" liability, *i.e.*, that the SKITTLES® labels deceptively omit that

13   SKITTLES® are unsafe because of TiO2.  *See, e.g.*, *id.* ¶ 44.  He alleges that SKITTLES® "are

14   worthless" and that he and other putative class members "paid a premium . . . or otherwise paid

15   more for [SKITTLES®]" than they would have paid "absent Defendant's omissions."  *Id.* ¶¶ 37,

16   49.

17   **E.    Mars's Announcement Regarding Removal of Artificial Colors from Its
              Products.**

18       On February 5, 2016, Mars announced that it planned to "remove all artificial colors from

19   its human food products as part of a commitment to meet evolving consumer preferences."  RJN

20   Ex. B.  It made clear that "[a]rtificial colors pose no known risks to human health or safety, but

21   consumers today are calling on food manufacturers to use more natural ingredients in their

22   products."  *Id.*  It cautioned that "[e]liminating all artificial colors from our human food portfolio

23   is a massive undertaking" "that will take time and hard work to accomplish."  *Id.*  It estimated that

24   "developing alternative colors, ensuring their safety and quality, obtaining regulatory approval,

25   and introducing the new ingredients across the entirety of its human food portfolio around the

26   world will take about five years."  *Id.*

27

28

---

In January 2021, Mars explained that it planned to prioritize removal of artificial colors in Europe only. Mars cited recent findings "that consumer expectations regarding colors in food differ widely across markets and categories." RJN Ex. C. "For treats, [Mars] found that many of [its] consumers across the world do not, in fact, find artificial colors to be ingredients of concern." *Id.* Mars explained that "[t]his shift in approach is consistent with [its] stated desire to meet evolving consumer preferences, which was the bedrock of [its] 2016 announcement." *Id.*

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). There must be "more than a sheer possibility that a defendant has acted unlawfully," *id.*, and a claim must be supported by facts sufficient to "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555. In addition, because Plaintiff grounds his claims in fraud, his claims must also satisfy the heightened pleading requirements of Rule 9(b). *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1090 (N.D. Cal. 2017).

## ARGUMENT

### I.   Federal Law Preempts Plaintiff's Claims.

Federal preemption "can occur in one of several ways: express, field, or conflict preemption." *Cohen v. Apple Inc.*, --- F. 4th ----, 2022 WL 3696583, at *12 (9th Cir. Aug. 26, 2022) (citation omitted). Express preemption occurs when Congress "indicate[s] its intent to displace state law through express language." *Chae v. SLM Corp.*, 593 F.3d 936, 942 (9th Cir. 2010). Conflict preemption occurs when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Ting v. AT&T*, 319 F.3d 1126, 1136 (9th Cir. 2003) (citations omitted). "Under the doctrine of implied conflict preemption, '[t]he statutorily authorized regulations of an agency will pre-empt any state or local law that conflicts

1    with such regulations or frustrates the purposes thereof.'"  *Cohen*, 2022 WL 3696583, at *13

2    (citation omitted).

3        A.    **The FDCA Preempts Plaintiff's Claims Premised on Use of TiO2.**

4        Plaintiff's "use" liability claims conflict with, and are therefore impliedly preempted by,

5    the FDCA and FDA's TiO2 regulations.  Congress delegated to FDA authority to regulate the

6    safety of color additives in food:  It has prohibited *any* color additive *unless* FDA determines under

7    what conditions that additive "will be safe" and prescribes those conditions in a regulation.  *See*

8    *supra* p. 2; *see also Red v. Gen. Mills, Inc.*, 2015 WL 9484398, at *7 (C.D. Cal. Dec. 29, 2015)

9    ("Congress granted the FDA authority to comprehensively regulate food safety by requiring the

10   pre-market approval of food additives . . . .");  *Backus v. Gen. Mills, Inc.*, 122 F. Supp. 3d 909, 933

11   (N.D. Cal. 2015) (same).  Following Congress's directive, FDA has determined that "titanium

12   dioxide may be safely used for coloring foods generally" when it "does not exceed 1 percent by

13   weight of the food."  21 C.F.R. § 73.575(c)(1).  In so doing, FDA necessarily determined that

14   "there is convincing evidence that establishes with reasonable certainty that no harm will result

15   from the intended use of" TiO2.  *Id.* § 70.3(i).

16       Plaintiff does not allege the concentration of TiO2 in SKITTLES® exceeds the

17   concentration FDA has found to be "safe."  Instead, he alleges TiO2 is unsafe even at that

18   concentration, and that use of TiO2 as expressly authorized by FDA is nonetheless prohibited by

19   state law.  Compl. ¶ 98.

20       Plaintiff's claims are barred by implied conflict preemption.  His attempt to use state law

21   to bar the use of TiO2 in a manner expressly authorized by FDA would plainly "conflict[] with"

22   and "frustrate[] the purposes" of the FDCA and FDA's TiO2 regulations.  *See Cohen*, 2022 WL

23   3696583, at *13 (citation omitted).  Likewise, it would clearly pose "an obstacle to the

24   accomplishment and execution of" Congress's "purposes and objectives" in delegating plenary

25   authority over safety determinations and approval of color additives to FDA.  *See Ting*, 319 F.3d

26   at 1136 (citation omitted); *see also* 21 U.S.C. § 393(b)(2) (FDA shall "protect the public health by

27   ensuring that . . . foods are safe"); *Beasley v. Lucky Stores, Inc.*, 400 F. Supp. 3d 942, 950–54

28   (N.D. Cal. 2019) (state law claims alleging phosphorous additives are unsafe impliedly preempted

1    by FDA regulation expressly permitting their use in food until 2018); *Backus v. Nestlé USA, Inc.*,

2    167 F. Supp. 3d 1068, 1071–74 (N.D. Cal. 2016) (same).

3         Indeed, Congress gave FDA authority to approve the "safe" use of color additives in food

4    to prevent plaintiffs from upending the United States food industry through state-specific tort

5    liability and standards of use. "Whether and in what amount a particular chemical substance poses

6    a serious public health risk is precisely the kind of complex question that requires a uniform answer

7    by a specialized agency tasked with making such determinations." *Red*, 2015 WL 9484398, at *7.

8    Individual studies constantly emerge positing long-term health risks posed by common

9    ingredients, including refined grains, trans fats, nitrates, sodium, and MSG. Plaintiff's "use"

10   theory—that the existence of such studies alone makes foods that contain these ingredients

11   unsafe—would permit "piecemeal" decisions "by courts or juries" to result in "conflicting

12   determinations," *id.*, regarding broad categories of foods, ranging from potato chips to deli meats,

13   white bread to Chinese food, and diet soft drinks to pickles.

14        "The Supreme Court's preemption case law indicates that regulatory situations in which

15   an agency is required to strike a balance between competing statutory objectives lend themselves

16   to a finding of conflict preemption." *Farina v. Nokia Inc.*, 625 F.3d 97, 123 (3d Cir. 2010). Thus,

17   in *Cohen*, the Ninth Circuit recently held that "the FCC's regulations . . . setting upper limits on

18   the levels of permitted RF radiation, preempt state laws that impose liability premised on levels of

19   radiation below the limits set by the FCC." 2022 WL 3696583, at *15. That is precisely the

20   situation here. The FDCA and FDA regulations preempt Plaintiff's "use" claims.

21        **B.**    **The FDCA Preempts Plaintiff's Claims Premised on TiO2 Labeling.**

22        Plaintiff's claims premised on "labeling" liability are expressly and impliedly preempted.

23        **– *Express preemption***: In 1990, Congress enacted the Nutrition Labeling and Education

24   Act ("NLEA"), Pub. L. No. 101-535, 104 Stat. 2353 (1990), which amended the FDCA to

25   "establish *uniform national standards* for the nutritional claims and the required nutrient

26   information displayed on food labels," *Lam v. Gen. Mills, Inc.*, 859 F. Supp. 2d 1097, 1102 (N.D.

27   Cal. 2012) (emphasis added; quotations omitted). The NLEA contains several express preemption

28   provisions. *See* 21 U.S.C. § 343-1(a). These provisions preempt state law requirements "not

1    identical to" FDA-regulated food labeling.  *See id.*  "[N]ot identical to" "means that the State

2    requirement directly or indirectly imposes obligations or contains provisions concerning the

3    composition or labeling" that are "not imposed or contained in the applicable provision[s]."  21

4    C.F.R. § 100.1(c)(4); *Lam*, 859 F. Supp. 2d at 1102 (citation omitted).

5            Among other things, the NLEA expressly preempts state law requirements not identical to

6    FDA regulations governing the disclosure of artificial coloring.  *See* 21 U.S.C. § 343-1(a)(3)

7    (citing 21 U.S.C. § 343(k) (artificial coloring)).  In addition to mandating how TiO2 must be

8    disclosed in the ingredients panel, *supra* p. 2 (citing 21 C.F.R. § 101.22(k)(2)), FDA regulations

9    specify where the ingredients panel should be placed ("either the principal display panel or the

10   information panel," 21 C.F.R. § 101.4(a)(1)), and where color additives like TiO2 should be listed

11   in the ingredients panel ("in descending order of predominance by weight," *id.*).

12           SKITTLES® labeling complies with these requirements by expressly stating "COLORS

13   ( . . . TITANIUM DIOXIDE . . . )" in the ingredients panel, and Plaintiff does not allege otherwise.

14   *See supra* pp. 2–3.  Plaintiff's suggestion that Mars must disclose TiO2 differently (and potentially

15   elsewhere) in the limited space available on the SKITTLES® package in order to "warn consumers

16   that [SKITTLES®] contain[] TiO2," Compl. ¶ 42, is "not identical to" and therefore is expressly

17   preempted by the NLEA and FDA regulations.  This is especially true where FDA regulations do

18   not even require TiO2 to be disclosed by name at all, let alone in some unspecified location on the

19   package based on Plaintiff's preference.

20           **– Implied Conflict Preemption**:  As noted above, Plaintiff does not dispute that

21   SKITTLES® comply with FDA's TiO2 regulations.  Yet, Plaintiff argues that state law requires

22   Mars to tell consumers that SKITTLES® are not "safe for human consumption" because they

23   contain TiO2.  *See, e.g.*, Compl. ¶¶ 44, 98.  But FDA's determinations impliedly preempt such

24   arguments.  FDA has determined, among other things, that TiO2 "may be safely used for coloring

25   foods" at concentrations of less than 1%, 21 C.F.R. § 73.575(c)(1), that "there is convincing

26   evidence that establishes with reasonable certainty that no harm will result from" such use, *id.*

27   § 70.3(i), and that such use will not "promote deception of the consumer" or "otherwise result in

28   misbranding or adulteration," 21 U.S.C. § 379e(b)(5)(B), (b)(6).

In view of these determinations, it would be false and misleading for Mars to declare that TiO2 nonetheless makes SKITTLES® "unsafe for human consumption."  And for Plaintiff to prevail on his "labeling" claims, this Court would necessarily have to contradict the FDA's safety determinations.  That is, the Court would have to hold that TiO2 *cannot* "be safely used for coloring foods," that "there *is* convincing evidence" that harm will result from use of TiO2, and that using TiO2 without such a warning would "promote deception of the consumer" and "result in misbranding or adulteration."

Plainly, such determinations would "conflict[] with" and "frustrate[] the purposes" of FDA's TiO2 regulations and pose "an obstacle to the accomplishment and execution of" Congress's objectives in delegating to FDA authority to determine whether and how color additives may be used in food.  *See Cohen*, 2022 WL 3696583, at *13 (citation omitted); *Ting*, 319 F.3d at 1136.  The FDCA impliedly preempts Plaintiff's labeling claims.

## II.     The Safe Harbor Doctrine Bars Plaintiff's Claims.

To ensure that "courts [do] not use the unfair competition law to condemn actions the Legislature permits," the California Supreme Court has articulated what is known as the "safe harbor doctrine."  *See Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 182, 184 (1999).  "If the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination."  *Id.* at 182.  In such cases, the Legislature has created a "safe harbor" for the conduct at issue, and "plaintiff[] may not use the general unfair competition law to assault that harbor."  *Id.*  The safe harbor doctrine applies to all the California unfair competition statutes, including the UCL, CLRA, and FAL.  *See Ebner v. Fresh, Inc.*, 838 F.3d 958, 963–64 (9th Cir. 2016).  Courts have thus repeatedly rejected attempts to impose duties under the UCL, CLRA, or FAL that are contradicted by legislative mandates on the same issue.  *See, e.g.*, *Pom Wonderful LLC v. Coca Cola Co.*, 2013 WL 543361, at *5 (C.D. Cal. Feb. 13, 2013) (UCL and FAL); *Alvarez v. Chevron Corp.*, 656 F.3d 925, 933–34 (9th Cir. 2011) (UCL and CLRA); *Bourgi v. W. Covina Motors, Inc.*, 166 Cal. App. 4th 1649, 1659 (2008) (CLRA).  In such cases, the safe harbor doctrine renders the allegedly unfair conduct "'fair' as a matter of law."  *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1166 (9th Cir. 2012).

Federal law expressly permits the use of TiO2 as a color additive; so too does state law, because the Sherman Law adopts all FDA regulations as state regulations—including FDA's TiO2 regulations. *See* Cal. Health & Safety Code §§ 110085, 110115. For the same reason, the Sherman Law also expressly permits TiO2 to be declared in labeling in the manner described above. *Supra* pp. 2–3. Thus, California expressly permits Mars to use TiO2 in SKITTLES® and renders the SKITTLES® label "fair as a matter of law," whether under the UCL, CLRA, or FAL.

### III.   Plaintiff Lacks Article III Standing.

In addition to asserting claims that are preempted and are barred by the safe harbor doctrine, Plaintiff fails to allege an injury sufficient to establish standing under Article III. Article III requires Plaintiff to show that he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *McGee v. S-L Snacks, Nat'l*, 982 F.3d 700, 705 (9th Cir. 2020) (citations omitted). The alleged injury must be "concrete and particularized," *id.*, and "actual or imminent," *Salmon Spawning & Recovery All. v. Gutierrez*, 545 F.3d 1220, 1225 (9th Cir. 2008). "Where, as here, a case is at the pleading stage, the plaintiff must clearly . . . allege facts demonstrating each element" of standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quotations omitted).

The Complaint does not establish standing. Plaintiff fails to allege any present physical injury or risk of future injury that his consumption of the product caused. His threadbare economic injury allegations fall equally short.

### A.   Plaintiff Alleges No Physical Injury or Plausible Risk of Future Harm.

Perhaps to avoid dooming class certification, Plaintiff does not allege he suffered any physical injury from consuming SKITTLES®. His generalized allegations about health risks or studies cannot substitute for the injury requirement. In *McGee*, the Court rejected such an attempt, explaining that the plaintiff did not plausibly allege that she actually suffered these injuries. 982 F.3d at 708 (Plaintiff "does not allege that she has undergone medical testing or examination to confirm that she suffers from these conditions or that they were caused by her consumption of Pop Secret"). The Court further held that "the studies cited in the complaint . . . are simply too

1   speculative to support standing, even at the pleading stage." *Id.* at 709.

2   Similarly, Plaintiff fails to allege that a "threatened injury is certainly impending or there

3   is a substantial risk that the harm will occur." *Id.* (citations and quotations omitted).  Instead, the

4   Complaint alleges generally that "consumers who purchase [SKITTLES®] are at a heightened risk

5   of a host of health effects" because of the "ability of a chemical substance to change DNA."

6   Compl. ¶ 8.  The Complaint further alleges that SKITTLES® "are not safe' because they "contain

7   heightened levels of titanium dioxide." *Id.* ¶ 9.

8   Such threadbare allegations fail to establish what "heightened levels" even means, let alone

9   that the risk of disease is "certainly impending" or that Plaintiff faces a "substantial risk" of future

10   harm.  *See McGee*, 982 F.3d at 709 (citations omitted).  This is particularly true given that (1)

11   Plaintiff does not allege that TiO2 in SKITTLES® exceeds FDA's one-percent threshold and (2)

12   FDA has already concluded that such levels are safe for human consumption.  *Supra* pp. 2–3.

13   Accordingly, as in *McGee*, Plaintiff's allegations of future injury are "simply too speculative to

14   support standing . . . ." *Id.* at 709.

15   **B.    Plaintiff Fails To Allege a Plausible Economic Injury.**

16   Plaintiff also fails to allege sufficient plausible facts to support an economic injury theory.

17   *First*, echoing the Plaintiff in *McGee*, *see* 982 F.3d at 705, Plaintiff asserts that he bargained for a

18   product that was "safe for consumption," but was deprived of the benefit of the bargain because

19   SKITTLES® "contain[] dangerous substances with serious health consequences."  Compl. ¶ 38.

20   Just as with the Pop Secret popcorn in *McGee*, Plaintiff does not allege that Mars "made . . .

21   representations about [SKITTLES®'] safety."  982 F.3d at 705.  And just as in *McGee*, such a

22   theory is "particularly" infirm because the label disclosed the allegedly harmful substance—in

23   *McGee*, trans fat, and here, TiO2.  *Id.* at 706.  Thus, because Plaintiff failed to show that "she did

24   not receive a benefit for which she actually *bargained*," rather than "the benefit she *thought* she

25   was obtaining," *id.* at 706 (citation omitted), Plaintiff lacks standing.

26   Similarly, in *Boysen v. Walgreen Co.*, 2012 WL 2953069 (N.D. Cal. July 19, 2012), the

27   plaintiff argued he would not have purchased fruit juices had he known they contained "'material

28   and significant' levels of arsenic and lead," which were not disclosed on the products' labels.  *Id.*

---

at *1 (citation omitted).  The court dismissed the suit for lack of standing because the plaintiff did not allege, among other things, that the arsenic and lead levels in the juices exceeded FDA's guidelines for safe consumption.  *Id.* at *7.  As the court observed, absent some plausible allegation supporting an economic injury claim, "plaintiff only alleges that he purchased and consumed the fruit juices [and] that the levels of lead and arsenic in defendant's product were unsatisfactory to him."  *Id.* at *7.

      *McGee* and *Boysen* are dispositive.  Whatever Plaintiff assumed regarding the safety of TiO2 in SKITTLES®, those "assumptions were not included in the bargain."  *McGee*, 982 F.3d at 706.  Plaintiff does not allege that the SKITTLES® label affirmatively misrepresents the safety of SKITTLES®.  He also does not allege that the concentration of TiO2 in SKITTLES® exceeded FDA limits.  Those facts alone defeat Plaintiff's injury theory.  Moreover, the label explicitly lists TiO2 as an ingredient.  Plaintiff therefore received the exact product for which he bargained:  a candy that uses TiO2 for coloring.

      *Second*, *McGee* also disposes of Plaintiff's argument that he overpaid for SKITTLES®, which are allegedly "worthless" because they contain TiO2.  Compl. ¶¶ 37, 49.  In *McGee*, the plaintiff alleged that she "suffered loss in an amount equal to the amount she paid for Pop Secret because Pop Secret is not fit for human consumption."  982 F.3d at 706 (quotations omitted).  The Ninth Circuit held this failed to establish injury because there were no "false representations" about Pop Secret and "Pop Secret's nutritional label disclosed the presence of artificial trans fat."  *Id.* at 707–08.  So too here:  The SKITTLES® label makes no false representations and expressly discloses the presence of TiO2.  Plaintiff cannot plausibly allege he overpaid for SKITTLES®.

### C.   Plaintiff Lacks Standing To Seek Injunctive Relief.

      As to injunctive relief more specifically, Plaintiff "has not (and cannot) reasonably claim that he has no way of determining whether Defendant's representations are true" before he purchases SKITTLES® again.  *Cimoli v. Alacer Corp.*, 546 F. Supp. 3d 897, 906 (N.D. Cal. 2021).  In *Davidson v. Kimberly-Clark Corp.*, the Ninth Circuit held that an allegedly deceived consumer can establish the threat of future harm if the labeling makes false or misleading claims, and the plaintiff is left to wonder whether he can rely on the product's advertising or labeling in the future.

889 F.3d 956, 970 (9th Cir. 2018).    As numerous district courts applying *Davidson* have recognized, this boils down to "situations where the plaintiff could not easily discover whether a previous misrepresentation had been cured *without first buying the product at issue*."  *Cordes v. Boulder Brands USA, Inc.*, 2018 WL 6714323, at *4 (C.D. Cal. Oct. 17, 2018) (emphasis added); *see also Cimoli*, 546 F. Supp. 3d at 906–08; *Matic v. U.S. Nutrition, Inc.*, 2019 WL 3084335, at *8 (C.D. Cal. Mar. 27, 2019); *Shanks v. Jarrow Formulas, Inc.*, 2019 WL 7905745, at *5 (C.D. Cal. Dec. 27, 2019).

Unlike in *Davidson*, Plaintiff does not identify any affirmative statements (e.g., "flushable" as used in *Davidson*) that would cause anyone to wonder if TiO2 has been removed from the product.  Plaintiff knows that SKITTLES® contain TiO2 because it says so on the label.  Compl. ¶ 7.  He can readily ascertain whether the product still contains TiO2 *before* deciding whether to purchase it again.  Accordingly, Plaintiff has not shown "a sufficient likelihood that he will again be wronged in a similar way" and lacks standing to seek injunctive relief.  *Id.*

## IV.  Plaintiff Fails To State a Claim.

### A.    Plaintiff Fails Plausibly To Allege Deception.

Because every one of his claims sounds in deceptive conduct, Plaintiff must allege deception with particularity.  *See* Fed. R. Civ. P. 9(b); *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019) (CLRA, UCL, and FAL); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) (fraud); Cal. Civ. Code § 1791.1(a) (breach of warranty); Cal. Com. Code § 2314(2)(c) (same); *Chuang v. Dr. Pepper Snapple Grp., Inc.*, 2017 WL 4286577, at *8 (C.D. Cal. Sept. 20, 2017) (unjust enrichment).  Plaintiff has not plausibly or particularly alleged any such deception.

Plaintiff's "use" and "labeling" liability theories both depend on SKITTLES® being deceptively marketed as "safe for human consumption when they are not."  Compl. ¶ 44.  Plaintiff has not, however, plausibly pled that SKITTLES® are *unsafe* for human consumption or that they cause health problems.  He does not allege that he or anyone else has suffered a cognizable physical injury.  At most, Plaintiff has alleged that there is scientific debate over whether TiO2 exposure contributes to long-term health problems.  *See id.* ¶¶ 31–32.  This is not enough.  Simply put,

Plaintiff does not allege that he or anyone else will get sick from eating the TiO2 in a bag of SKITTLES®—now or in the future.  *See supra* Part III.A; *Boysen*, 2012 WL 2953069, at *6–7 (plaintiff failed plausibly to allege that arsenic and lead in fruit juices at FDA-approved levels made the juices unsafe for consumption).

Plaintiff also falsely alleges that Mars "commit[ted] to U.S. consumers" to remove TiO2 from SKITTLES® and then reneged without "tell[ing] consumers that . . . it did not remove TiO2." Compl. ¶ 36.  The announcement of future plans is not a statement that TiO2 has been removed from SKITTLES®—to the contrary, as Plaintiff admits, the label continues to disclose its use. Further, Mars *did* tell consumers that it planned to prioritize removal of all artificial colors in Europe only.  RJN Ex. C.  Plaintiff cannot plausibly allege that these statements or actions were deceptive.

### B.   Plaintiff's Equitable Claims Must Be Dismissed Because He Has an Adequate Remedy at Law.

"[E]quitable relief is not appropriate where an adequate remedy exists at law." *Schroeder v. United States*, 569 F.3d 956, 963 (9th Cir. 2009).  In *Sonner v. Premier Nutrition Corp.*, the Ninth Circuit held that this "federal equitable principle[]" applies to California equitable claims, and that under this principle, a plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm."  971 F.3d 834, 843–44 (9th Cir. 2020).  On that basis, *Sonner* affirmed dismissal of equitable UCL, FAL, and CLRA claims because the plaintiff had asserted a CLRA claim for damages, meaning she had an adequate remedy at law. *See id.* at 837–38, 844–45.  Since *Sonner*, numerous courts have dismissed UCL, FAL, unjust enrichment, and equitable CLRA claims where plaintiffs also seek damages at law and fail to include any substantive allegations that they lack an adequate legal remedy.  *E.g.*, *Goldstein v. Gen. Motors LLC*, 2022 WL 484995, at *4–6 (S.D. Cal. Feb. 16, 2022); *Lisner v. Sparc Grp., LLC*, 2021 WL 6284158, at *7–8 (C.D. Cal. Dec. 29, 2021).  That is the case here, where the complaint alleges claims for breach of implied warranty, fraud, and CLRA damages, Compl. ¶¶ 88, 92–104, 118–148, requests "compensatory, statutory, and punitive damages, *id.* p. 23, and fails to allege that money damages are insufficient to remedy his alleged injuries.  And, as explained above,

1    Plaintiff lacks standing to seek injunctive relief.  Accordingly, Plaintiff has an adequate remedy at
2    law, and the Court should dismiss all of his equitable claims.

3    **C.      Plaintiff Fails To State a Song-Beverly Act Claim.**

4           Plaintiff alleges a breach of implied warranty under the Song-Beverly Consumer Warranty
5    Act, Cal. Civ. Code §§ 1790 *et seq.*  Song-Beverly, however, expressly excludes "consumables"
6    that are "intended for consumption by individuals," like SKITTLES®.  Cal. Civ. Code §§ 1791(a),
7    (d), 1794(a).  Thus, Plaintiff cannot state a claim under Song-Beverly.  *See, e.g.*, *Ivie v. Kraft Foods*
8    *Glob., Inc.*, 2013 WL 685372, at *14 (N.D. Cal. Feb. 25, 2013).

9                                              **CONCLUSION**

10          For the foregoing reasons, Mars respectfully requests that the Court dismiss Plaintiff's
11   Complaint with prejudice.

12   Dated:  September 30, 2022                    Respectfully submitted,

13

14                                                WILLIAMS & CONNOLLY LLP

15                                                By:  */s/ Stephen D. Raber*
                                                       Stephen D. Raber
16
                                                  Stephen D. Raber (SBN 121958)
17                                                David Horniak (SBN 268441)
                                                  680 Maine Avenue, SW
18                                                Washington, DC  20024
                                                  Telephone: 202-434-5000
19                                                Facsimile: 202-434-5029
                                                  Email:  sraber@wc.com
20                                                        dhorniak@wc.com
21
                                                  *Attorneys for Defendant Mars,*
22                                                *Incorporated*

23

24

25

26

27

28